**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| HECTOR TORRES<br>*Plaintiff*<br><br>v.<br><br>WARDEN JENNIFER REIS,<br>ET. AL.<br>*Defendants* | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | NO. 3:22-cv-1008 (SFR)<br><br><br><br><br><br><br>FEBRUARY 14, 2025 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Defendants Deborah Broadly, M. Vince,[1] Colleen Gallagher, Kirsten Shea, Debra Cruz, ARC Cooper, and ARC Shelton ("Defendants") move for summary judgment on all the Plaintiff's claims as outlined below. There is no dispute as to any material fact and Defendants are entitled to judgment as a matter of law.

First, the Plaintiff failed to exhaust his administrative remedies as to each of his claims prior to filing suit. Second, Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Broadly, Santavenere, Gallagher, Shea, and Cruz fail as a matter of law. Third, Plaintiff's First Amendment retaliation claims against Defendants Cruz, Broadley, Cooper, and Shelton also fail as a matter of law. Fourth, any requests for injunctive or declaratory relief are barred by the Eleventh Amendment and the PLRA. Finally, the Defendants are entitled to qualified immunity because their actions were both objectively reasonable under the circumstances and did not violate any clearly established law.

[1] Defendant "M. Vince's" name is actually Vincent Santavenere, as such, the undersigned will refer to this Defendant by his actual name throughout. Similarly, Defendant "Broadly" is actually Defendant "Broadley." The undersigned will use the correct spelling throughout.

Accordingly, for the reasons set forth more fully below, this Court should grant the Defendants' motion for summary judgment.

## I. INTRODUCTION

The Plaintiff, Hector Torres, a *pro se* incarcerated inmate, brought this civil rights action against various Department of Correction ("DOC") employees on August 8, 2022. *See* ECF No 1. Plaintiff asserted that these employees violated his Eighth and First Amendment rights through deliberate indifference to his medical needs and retaliation for protected speech.

On April 7, 2023, this Court conducted an initial review of Plaintiff's complaint. *See* ECF No. 13. Upon initial review, this Court allowed Eighth Amendment deliberate indifference claims to proceed against Defendants Broadley, Santavenere, Gallagher, Shea, and Cruz in their individual and official capacities. ECF No. 13, Pg., 13. Official capacity claims for injunctive and declaratory relief were allowed to proceed against these defendants "[a]s Mr. Torres' Complaint alleges that he is subject to ongoing Eighth Amendment medical indifference…" ECF No. 13, Pg., 13. This Court also allowed First Amendment retaliation claims to proceed against Cruz, Broadley, Cooper, and Shelton in their individual capacities. *See*, ECF No. 13, Pg., 13. All other claims and defendants were dismissed.

First, Plaintiff claims that Defendants Broadley, Santavenere, Gallagher, Shea, and Cruz acted with a conscious disregard to his need for adequate medical care, a timely outside specialist appointment, and a special diet for his serious medical conditions arising from his gastrointestinal issues and gallbladder diagnosis." ECF No 13, Pg., 7. More specifically, Plaintiff claims that he was "denied follow up care" (ECF No. 1 ¶¶ 34, 42, 45-46, 71, 89, 102-103), that various medications he was prescribed were "not working" or "giving side effects" (ECF No. 1., ¶¶ 35, 43, 82), that medical and non-medical staff did not respond to him or respond quickly enough,

(ECF No. 1., ¶¶ 33, 36, 39, 77), that he did not receive treatment for pain (ECF No. 1., ¶¶ 28, 31, 34, 39, 68-69 81, 87, 96), that it took too long to see a specialist (ECF No. 1, ¶¶ 65-66, 100), and that he did not receive any medication for gallstones or a special diet (ECF No. 1, ¶¶ 53, 67, 96-97).

Next, Plaintiff alleges, that Cruz, Broadley, Cooper, and Shelton retaliated against him as a result of his filing various grievances. ECF No. 13, Pg., 10. Specifically, Plaintiff alleges that Cruz returned a grievance on June 16, 2021 and held up the processing of a separate grievance as a form of retaliation. ECF No 1. ¶¶ 52, 57. Plaintiff alleges that Broadley failed to provide adequate treatment and took his medication away due to a grievance Plaintiff filed on January 29, 2021. ECF No. 1, ¶ 32, 39, 47. Plaintiff claims that Shelton returned Plaintiff's June 7, 2021 grievance as a form of retaliation. ECF No. 1, ¶ 49. Finally, Plaintiff alleges that Defendant Cooper retaliated against Plaintiff by returning a grievance on July 9, 2021. ECF No. 1, ¶ 60.

Defendants are entitled to summary judgement on all of Plaintiff's claims for a variety of reasons. Chiefly among them is the fact that Plaintiff has failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").

Further, Plaintiff's Eighth Amendment deliberate indifference to medical needs claims concerning his chronic constipation and gallstones must fail as there can be no dispute that: (1) neither Plaintiff's constipation nor gallstones gave rise to a serious medical need; (2) neither Broadley, Santavenere, Gallagher, Shea, or Cruz were alerted to a serious medical need regarding Plaintiff's constipation or gallstones which they intentionally disregarded; and (3) Plaintiff's claims of deliberate indifference are clearly a mere disagreement over treatment which does not give rise to a constitutional violation.

In addition, Plaintiff's First Amendment retaliation claims against Cruz, Broadley, Cooper, and Shelton all fail because there can be no dispute that their actions were motivated by legitimate non-retaliatory reasons; i.e., discretionary medical judgment, compliance with DOC rules and procedures, and factors outside their authority and/or control. Plaintiff cannot establish the existence of the requisite protected activity which would form *the basis* for any alleged retaliatory conduct.

Furthermore, the Eleventh Amendment and the PLRA bar any injunctive or declaratory relief sought by Plaintiff from Defendants in their official capacities. Plaintiff's claims are not only meritless, they also cannot be characterized as ongoing. There can be no dispute Plaintiff has received all necessary specialist appointments *and* all necessary medical treatment.

Finally, qualified immunity bars Plaintiff's claims against Defendants. The Defendants now move for summary judgment.

## II. UNDISPUTED MATERIAL FACTS

In the interest of brevity, Defendants set forth all material and relevant facts supported by the admissible evidence in the record and referenced in their Local Rule 56(a)(1) Statement of Material Facts and do not repeat those facts herein, except as may be appropriate in the discussion below.

## III. ARGUMENT

### A. Summary Judgment Standard

Federal Rule of Civil Procedure Rule 56(c) requires the entry of Summary Judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Szekeres v. Schaeffer*, 304 F. Supp. 2d 296, 304 (D. Conn. 2004). "[T]he mere existence of a factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party," and facts are material to the outcome if the substantive law renders them so. *Id.* at 247–252.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the pleadings, affidavits, or other documentary evidence that "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Those facts that are material will be identified by the substantive law governing the case. *Anderson*, 477 U.S. at 248; *Middlesex Hosp. v. On Assignment Staffing Servs.*, *Inc.*, No. 3:14-CV-1138 (AWT), 2017 WL 4185456, at *2 (D. Conn. Sept. 21, 2017).

To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50. "A nonmoving party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co*., 804 F.2d 9, 12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987). Moreover, a party may not create a genuine issue of fact by presenting unsupported statements. *Securities and Exchange Comm'n. v. Research Automation Corp*., 585 F.2d 31, 33 (2d Cir. 1978). The plaintiff must also produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. *Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp.,* 812 F.2d 141, 144 (3d Cir. 1987). "Summary judgment cannot be defeated by the presentation . . . of but a 'scintilla

of evidence' supporting [a] claim." *Mercado v. Dep't of Corr.*, No. 3:16-CV-1622 (VLB), 2018 WL 2390139, at *4 (D. Conn. May 25, 2018) (quoting *Anderson*, 477 U.S. at 251).

"When a motion for summary judgment is supported by documentary evidence and sworn affidavits and 'demonstrates the absence of a genuine issue of material fact,' the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or 'rely on conclusory allegations or unsubstantiated speculation.'" *Paschal-Barros v. Santili*, No. 3:16-CV-1690 (JCH), 2017 WL 8776959, at *1 (D. Conn. Nov. 30, 2017) (quoting *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted)).

B. **Plaintiff Failed to Exhaust His Administrative Remedies Prior to Filing Suit**.

At the time he filed this action, on August 8, 2022, Plaintiff was an incarcerated inmate and was required to exhaust all administrative remedies available to him pursuant to the Prison Litigation Reform Act ("PLRA"). *See* Ex. A, DOC Movement History. However, Plaintiff failed to exhaust his administrative remedies with respect to his retaliation claims. Under the process available to him, Plaintiff was required to file a procedurally complaint Level 1 Grievance after attempting informal resolution of his complaint, and within thirty days of the incident giving rise to the grievance. *See* Att. 1 to Ex. B. Plaintiff was also required to file a procedurally compliant Health Services Administrative Remedy of medical staff conduct after attempting informal resolution of those issues. *See* Att. 1 to Ex. C. Plaintiff filed no Level 1 grievances or HSARs regarding his retaliation claims.[2] Accordingly, because Plaintiff did not file any grievances or

---

[2] Plaintiff's allegations concern both custody and medical staff. As Plaintiff complains about health care providers and custody staff he is required to follow administrative remedies procedures under two separate administrative directives. With respect to his claims against custody staff, Plaintiff is required to adhere to Administrative Directive 9.6. With respect to his claims against medical staff, Plaintiff is required to adhere to Administrative Directive 8.9. "Administrative Directive 8.9 provides Health Services Review procedures to address two types of issues or claims related to the medical, dental or mental health care of an inmate: (1)

HSARs relating to his retaliation claims against Defendants in accordance with the DOC administrative remedies procedures, he failed to fully and properly exhaust his administrative remedies with respect to those claims. As a result, judgment should enter for the Defendants on all of Plaintiff's retaliation claims against them.

**1. The Prison Litigation Reform Act Requires Prisoners to Exhaust Their Administrative Remedies Prior to Bringing an Action Pursuant to 42 U.S.C. § 1983.**

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies before filing a federal lawsuit related to prison conditions. 42 U.S.C. § 1997e(a). "The PLRA's exhaustion requirement applies to all inmate suits about prison life[;]" *Porter v. Nussle*, 534 U.S. 516, 532 (2002); regardless of whether the inmate may obtain the specific relief he desires through the administrative process. *See Booth v. Churner*, 532 U.S. 731, 738 (2001). The statute specifically provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion must precede commencement of suit. *Porter*, *supra*. The language of the statute is mandatory. *Ross v. Blake*, 578 U.S. 632, 638 (2016). The Supreme Court has held that inmates must exhaust administrative remedies before filing any type of action "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532.

Moreover, the PLRA requires "proper exhaustion," which includes complying with all "procedural rules," including filing deadlines, as defined by the particular prison grievance system.

---

Diagnosis and Treatment issues and (2) Administrative health care issues involving a procedure, practice, policy or the improper conduct of a health services provider." *Thorne v. Lewis*, No. 3:19-CV-24 (VLB), 2021 U.S. Dist. LEXIS 181864, at *9 (D. Conn. Sep. 23, 2021).

*Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). Informal efforts to put prison officials on notice of inmate concerns, such as inmate requests or letters, do not satisfy the exhaustion requirement. *Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). In other words, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 83–84). Furthermore, Plaintiff is required to exhaust his administrative remedies for each claim he has asserted in federal court. *Ortiz v. McBride*, 380 F.3d 649, 653-54 (2d Cir. 2004).

An inmate may be excused from the exhaustion requirement only if administrative remedies were, not in fact, available. The Supreme Court has identified three circumstances in which an administrative remedy is not available to an inmate: (1) "the administrative remedy may operate as a 'dead end,' such as where the office to which inmates are directed to submit all grievances disclaims the ability to consider them . . . [(2)] the procedures may be so confusing that no ordinary prisoner could be expected to 'discern or navigate' the requirements . . . [a]nd [(3)] prison officials may 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Shehan v. Erfe*, No. 3:15-CV-1315 (MPS), 2017 WL 53691, at *6 (D. Conn. Jan. 4, 2017) (quoting *Ross*, 136 S. Ct. at 1859-60). While none of these scenarios are supported by the record in the current action, the Second Circuit has specifically recognized A.D. 9.6 as "not so opaque as to be unavailable, plainly stating that [i]f the verbal option does not resolve the issue, the inmate shall submit a written request." *Riles v. Buchanan*, 656 Fed. App'x. 577, 581 (2d Cir. 2016) (Summary Order).

Courts require inmates to utilize each administrative appeal procedure step to exhaust their administrative remedies. *See, e.g., Neal v. Goard*, 267 F.3d 116, 122 (2d Cir. 2001) ("grievances

must now be fully pursued prior to filing a complaint in federal court"). Prison appellate remedies that are available to inmates are included in this requirement; "[t]hus, even if plaintiff received no response to his grievance, he could have appealed it to the next level. By not doing so, plaintiff failed to exhaust his administrative remedies as required by the PLRA as a prerequisite to filing this lawsuit." *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002); *see also, Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) ("plaintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"). An inmate's failure to exhaust administrative remedies before commencing suit is a question properly raised by way of a motion for summary judgment. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y.2003); *Torrence v. Pesanti*, 239 F. Supp. 2d 230, 232 (D. Conn. 2003).

**2. Plaintiff Did Not Properly Exhaust His Administrative Remedies Pertaining to His Retaliation Claims Against Defendants Shelton and Cooper Because He Filed No Timely and Procedurally Complaint Grievances Regarding These Claims**.

The Department of Correction provides a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority. Att. 1 to Ex B, §§ 1 & 3(a). Administrative Directive 9.6, titled Inmate Administrative Remedies, sets forth this procedure. Att. 1 to Ex. B; *see also, Riles*, 656 Fed. App'x. at 579 ("The Connecticut Department of Correction ('DOC') requires inmates to submit grievances in accordance with Administrative Directive 9.6 ('AD 9.6')"); *Allen v. Kunkel*, No. 3:18-CV-297 (JCH), 2018 WL 3553335, at *4 (D. Conn. July 23, 2018). Every inmate receives a summary of this directive, in either English or Spanish, during orientation and copies of the directive are

available at each facility, in English and Spanish. Att. 1, to Ex. B, § 5, (a and b). Administrative Remedies Coordinators are appointed to oversee the administrative remedies process. *Id*. § 4.

AD 9.6 requires an aggrieved inmate to first seek informal resolution of his issues, in writing, using an Inmate Request Form (Form No. CN 9601), prior to filing a formal grievance. Ex B, ¶¶ 13-14, Att. 1 to Ex B, § 6 (a)(i); *Allen*, 2018 WL 3553335, at *4. If the inmate is not satisfied with the response he receives, or does not receive a response, the inmate must file a Level 1 grievance (Form No. CN 9602) by depositing it in the "Administrative Remedies box" along with his Inmate Request Form showing his attempts to resolve the issue informally. Ex B, ¶ 16, Att. 1 to Ex B, § 6 (a)(ii); *Allen*, 2018 WL 3553335, at *4; *Jones v. Johnson*, No. 3:15-CV-1135 (DJS), 2017 WL 1843692, at *4 (D. Conn. May 8, 2017). Pursuant to A.D. 9.6, an inmate must file their Level 1 grievance within thirty days of the cause of the grievance. *See* Att. 1 to Ex. B, § 6 (a)(ii)(4) (The grievance "*must* be filed *within 30 calendar days* of the occurrence or discovery of the cause of the Grievance." (emphasis added)). There is no explicit exception to the requirement that an inmate must file a Level 1 grievance within 30 days of the occurrence or discovery of the cause of the grievance, and "[a]ny exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner." Att. 1 to Ex. B, § 12. The Grievance Log maintained by the Administrative Remedies Coordinator includes the dates of the initial receipt, the name and inmate number of the grievant, a brief description of the request, and the disposition. Ex B, ¶ 7; Att. 1 to Ex B, § 5 (o)(i and ii).

Plaintiff's Retaliation claims are purported to have arisen from Shelton's return of Plaintiff's June 7, 2021 grievance and Cooper's return of a grievance on July 9, 2021. ECF No. 1, ¶¶ 49, 60. To properly exhaust, Plaintiff was required to file a Level 1 grievance relating to the incident, accompanied by an informal resolution, within thirty days of June 7, 2021 and July 9,

2021 respectively—or before July 7, 2021 and August 8, 2021 respectively. Plaintiff did neither. Ex. B, ¶¶ 22-28; Ex B, Atts., 4-6.

In fact, the only Level 1 grievance submitted by the Plaintiff between June 30, 2020 to June 30, 2023 concerned Plaintiff's allegations that he was not receiving responses from medical staff. *See*, Ex. B, ¶¶ 25-27; Ex B, Atts. 4-6, 7. That grievance was denied. *See* Ex. B, ¶ 27; Ex B, Att. 7. Plaintiff did not file any other Level 1 Grievances, nor any Level 2 Grievances whatsoever, at Cheshire Correctional Institution (CCI) between June 30, 2020 and June 30, 2023. *See*, Ex. B, ¶ 28; Ex B, Atts. 4 -7.

Finally, Grievance logs from CCI reveal Plaintiff failed to file a single Level 1 Grievance regarding any of the alleged retaliatory conduct in this action at any point between June 30, 2020 and June 30, 2023. Ex. B, ¶¶ 23-28; Ex B, Atts. 4-6. Plaintiff both knew how to utilize and had access to the requisite process to seek an administrative remedy; but did not do so. *See*, Ex B, ¶¶ 23-28; Ex B, Att. 7; Ex B, Att. 1, § 5(A). Accordingly, because Plaintiff failed to file any grievances within the thirty-day period, his claims of retaliation against Defendant Cooper and Shelton are barred, and this Court should enter judgment for these Defendants on these claims.

**3. Plaintiff Did Not Exhaust His Retaliation Claims Against Defendants Cruz or Broadley.**

The DOC provides a means for an inmate to seek administrative review of any health-related issue. The administrative remedies process is contained in Administrative Directive (AD) 8.9, and the administrative remedy regarding the provision of health services is a Health Services Administrative Remedy (HSAR). See Ex. C, Declaration of Deb Cruz, Att. 1, State of Connecticut Department of Correction Administrative Directive 8.9, Administrative Remedy for Health Services. There are two types of HSARs: (A) Diagnosis/Treatment; and (B) Review of an Administrative Issue. Ex. C, Att. 1, § 3(e)(i) and § 6(a).

A "Diagnosis and Treatment" Health Service Review is "[a] review of a diagnosis or treatment including a decision to provide no treatment, relating to an individual inmate." Ex. C, Att.1, § 6(a)(i). A "Review of an Administrative Issue" is defined as a challenge to "[a] review of a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." Ex. C, Att. 1 § 6, (a) (ii). A copy of this directive is published in both English and Spanish and made available to inmates either on request or at their facility. Ex. C, Att. 1 § 4(a)(i). Each inmate is also issued a written summary of the directive during their orientation. *Id*. at § 4(a)(ii). Health Services Administrative Remedies Coordinators are appointed to oversee the administrative remedies process. *Id*. at § 5.

Pursuant to AD 8.9, an inmate seeking either type of review must seek informal resolution prior to filing a formal request for an HSAR. Att. 1 to Ex C, § 6(b)(ii). Informal resolution may include attempts to resolve the issue verbally, however, if verbal communication does not resolve the issue, the inmate must submit a written request via a CN 9601. *See* Att. 1 to Ex C, § 6(b)(ii). If the inmate is not satisfied with the informal resolution he receives, the inmate must file an HSAR Request (Form No. CN 8901) by depositing it in the "Health Services Administrative Remedies Box" and attaching his Inmate Request Form showing his attempts to resolve the issue informally. *Id*. § 6(b)(iii); *Allen*, 2018 WL 3553335, at *4; *Jones v. Johnson*, No. 3:15-CV-1135 (DJS), 2017 WL 1843692, at *4 (D. Conn. May 8, 2017). Pursuant to AD 8.9, an inmate must file their Level 1 HSAR within "30 calendar days of the occurrence or discovery of the cause of or reason for the request for the Health Services Administrative Remedy." *See* Att. 1 to Ex. C, § 6(b)(iii)(4); ("The grievance *must* be filed *within 30 days* of the occurrence or discovery of the cause of the grievance . . ." (emphasis added)). There is no explicit exception to the requirement that an inmate must file a Level 1 HSAR within 30 days the occurrence or discovery of the cause of or reason for the

request for the Health Services Administrative Remedy, although "[a]ny exception to the procedures in this Administrative Directive shall require prior written approval from the Commissioner." *Id*. at § 9. Here, Plaintiff did not file any HSAR's concerning his retaliation claims at any point between January 1, 2020 and August 8, 2022. Ex. C, ¶¶ 34-69; Ex. C, Atts. 3 - 12.

Plaintiff's retaliation claims against Broadley concern a purported denial of treatment stemming from a January 29, 2021 HSAR. ECF No. 1, ¶ 32, 39, 47. His retaliation claims against Cruz concern an HSAR returned on June 16, 2021 and other unspecified HSAR's that were purportedly held up on unspecified dates. ECF No 1. ¶¶ 52 57. Plaintiff was required to file a Level 1 HSAR relating to each incident of retaliation accompanied by an informal resolution within thirty days of the occurrence of the retaliation. Plaintiff did not do so. Ex. C, ¶¶ 34-69; Ex. C, Atts. 3 - 12.

The Plaintiff failed to file a single Level 1 or Level 2 HSAR regarding his claims between January 1, 2020 and the filing of his lawsuit on August 8, 2022. *See* Ex. C, ¶ 69. Although Plaintiff filed several other HSAR's during this time period none of them concerned the retaliation allegations referenced in his complaint. Ex. C, ¶¶ 34-69; Ex. C, Atts. 3 - 12. The existence of these additional HSAR's indicates that Plaintiff both knew how to utilize and had access to the requisite process to seek an administrative remedy; but did not do so. Accordingly, because Plaintiff failed to file any non-defective HSARs within the thirty-day period, his retaliation claims are barred.

Finally, Plaintiff's claim in his complaint that he has exhausted administrative remedies regarding certain claims is completely unsupported and cannot create a disputed issue of fact to overcome the Defendants' motion for summary judgment. *See, e.g., Simmons v. Sheckler*, 3:16-CV-012224 (JCH), 2018 WL 3596748, at * 3 (D. Conn. July 26, 2018) (granting defendant's summary judgment based on plaintiff's failure to exhaust, finding that plaintiff "cannot rely

exclusively on conclusory allegations or unsubstantiated speculation to defeat summary judgment, particularly in light of the defendant's Affidavits showing that [plaintiff] never filed a grievance") (citations omitted); *Chambers v. Johnpierre*, 3:14-CV-1802 (VAB), 2016 WL 5745083, at *7 (D. Conn. Sept. 30, 2016) (concluding that inmate's "unsupported statements that he filed grievances and grievance appeals" failed to create an issue of fact); *see also Khudan v. Lee*, 12-CV-8147 (RJS), 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016), *appeal dismissed*, 2016 WL 10100723 (2d Cir. Dec. 8, 2016) ("Plaintiff's self-serving and incomplete testimony that he sent an appeal is insufficient to create a genuine dispute of fact, particularly in light of Defendants' evidence that no grievance was ever sent.") (internal citations and quotation marks omitted) (emphasis in original).

The Plaintiff quite simply has not exhausted his administrative remedies with respect to his retaliation claims, as the record evidence reveals that he failed to properly and timely follow the procedure for filing grievances in accordance with ADs 9.6 and 8.9 as required by the PLRA. Accordingly, Plaintiff's retaliation claims are barred. Since the plain language of §1997(a) states that "[n]o action shall be brought…" and there are no other claims alleged, all of Plaintiff's retaliation claims are barred as a matter of law for failure to exhaust, and judgment on all those counts should enter for the Defendants.

**C. Plaintiff's Eighth Amendment Deliberate Indifference Claims Fail as A Matter of Law**

To prevail on a claim of deliberate indifference to serious medical needs, "a plaintiff must provide evidence of sufficiently harmful acts or omissions and intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel." *Young v. Choinski*, 15 F. Supp. 3d 172, 181 (D. Conn. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976)). A plaintiff must show both that his medical need was

serious, and that the defendant acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). However, "the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." *Young*, 15 F. Supp. 3d at 181 (quoting *Smith*, 316 F.3d at 184). Therefore, "not every lapse in prison medical care will rise to the level of a constitutional violation." *Id*. (quoting *Smith*, 316 F.3d at 184). "Mere negligence will not support such a claim under section 1983; there must be some conduct that 'shocks the conscience' or a 'barbarous act.'" *Id*. (citing *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir.1970)) (quotation omitted). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

"Objectively, the alleged deprivation must be 'sufficiently serious.'" *Oh v. Saprano*, No. 3:20-CV-237 (SRU), 2020 WL 4339476, at *4 (D. Conn. July 27, 2020) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[The Second Circuit applies] a two-part inquiry to determine whether an alleged deprivation is objectively serious." *Benjamin*, 794 F. App'x at 11 (quoting *Salahuddin*, 467 F.3d at 279–80). "[A] prisoner must demonstrate that (1) he 'was actually deprived of adequate medical care,' and (2) the 'inadequacy in medical care [wa]s sufficiently serious.'" *Id*. (quoting *Salahuddin*, 467 F.3d at 280). Furthermore, the underlying condition itself must be "one that may produce death, degeneration, or extreme pain." *Hathaway*, 99 F.3d 550, 553 (2d Cir. 1996).

Subjectively, the defendants must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of their actions or inaction. *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). "[T]o satisfy the subjective component, a prisoner must show deliberate indifference, i.e., that the charged official possessed 'a state of mind that is the equivalent of criminal recklessness.'" *Benjamin v. Pillai*, 794 F. App'x 8, 11 (2d Cir. 2019)

(quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Plaintiff must establish that prison officials had actual knowledge of his serious medical needs but were deliberately indifferent. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Brock v. Wright*, supra (emphasis added). "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.2d 178, 184 (2d Cir. 2003). To establish indifference of a constitutional magnitude, the plaintiff must prove that "the defendants had a culpable state of mind and intended wantonly to inflict pain." *Frank v. Cty. of Ontario*, 884 F. Supp. 2d 11, 18 (W.D.N.Y. 2012). An isolated failure to provide medical treatment, without more, is generally not actionable unless the surrounding circumstances suggest a degree of deliberateness, rather than inadvertence, in the failure to render meaningful treatment. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). "The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves… [T]he essential test is one of medical necessity and not one simply of desirability." (internal citations omitted) *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).

The Defendants address the elements (personal involvement, objectively serious deprivation, and subjective knowledge and culpability) below in turn.

**1. Personal involvement**

The Second Circuit clarified in *Tangreti v. Bachmann* what the Supreme Court had already determined in 2009 in *Aschroft v. Iqbal*: namely, that there can be no supervisory or vicarious liability for actions brought under 42 U.S.C. § 1983. *See, Tangreti*, 983 F.3d at 614-20; *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 676 (2009)("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

"We join these circuits in holding that after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).

Before *Tangreti*, plaintiffs in this Circuit often still argued or relied on the five-factor "*Colon* test" from *Colon v. Coughlin*, 58 F.3d 865, 873 (1995) and claimed that it allowed for § 1983 liability based on alleged personal involvement arising from theories other than direct, personal involvement. However, the Supreme Court's decision in *Iqbal* in 2009 undercut the validity of the Second Circuit's *Colon* test. *See, Ashcroft*, 556 U.S. at 677 ("[i]n a § 1983 suit or a *Bivens* action--where masters do not answer for the torts of their servants--the term 'supervisory liability' is a misnomer."). The Second Circuit in *Tangreti* confirmed what *Iqbal* had already held: only direct, personal involvement of the defendant in the constitutional violation is sufficient to establish liability in §1983 actions; other theories of personal involvement are not sufficient.

The *Tangreti* holding is clear and unmistakable: "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti*, 983 F.3d at 620.

Here, this matters for Defendants who had and have varying levels of responsibility for care and varying dates of involvement.

First, APRN Broadley had no personal involvement in anything occurring prior to February 24, 2020 as this is when she first started treating Plaintiff. Ex D, ¶ 24. Therefore, she was not personally involved in any alleged wrongdoing or claims of deliberate indifference arising prior to February 24, 2020. *Id*.

Second, Santavenere, Gallagher, and Shea all had a supervisory or administrative roles. They are all administrators, not medical providers. Ex F, ¶¶ 5-6, 9-11, 12-13, 37; Ex G, ¶¶ 5-11; Ex H, ¶¶ 4-15. As such, Santavenere, Gallagher, and Shea have no legal responsibility here for acts or omissions of others, such as doctors or APRNs that independently render medical decisions for patient care.

Finally, Cruz, as a Head Nurse had a limited role in Plaintiff's care. Ex C, ¶¶ 7-13. Cruz has no legal responsibility here for acts or omissions of others, such as doctors or APRNs that outranked her on medical decisions for patient care. Ex C, ¶ 9. Cruz is accountable for her own conduct only, no one else's. And her actual conduct is quite limited. Ex C, ¶¶ 70-76.

As detailed above, the deliberate indifference standard requires Plaintiff to satisfy both objective and subjective elements. Both elements are addressed in turn below.

### 2. *Plaintiff's Constipation and Gall Stones Did Not Rise to the Level of An Objectively Serious Medical Condition*

Under the circumstances, no court could reasonably conclude that Plaintiff's constipation and gallstones established an objectively serious medical condition. A sufficiently serious condition is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway*, 37 F.3d 63, 66 (2d Cir. 1994). Plaintiff's constipation and gallstones, on and after February 2020, did not rise to the level of a serious medical need. *See*, Ex. D, ¶¶ 17-68; ECF No. 49.

First, Plaintiff does not even sufficiently allege a serious medical need. Plaintiff does not allege that any harm, imminent or otherwise, ultimately befell him as a result of Defendants purported failure to provide him with medical care, an immediate specialty appointment, or a special diet. See, ECF No. 1. Nor can he provide any evidence to support such a claim. Instead, Plaintiff's complaint is full of conclusory allegations and speculation about the consequences of not being provided various timely treatments. "It is the Plaintiff's believe that at this point something more then [sic] just constipation was the problem." See, ECF No. 1, ¶ 35. "The plaintiff believes that from being backed up for so long and not being able to use the rest room plus the defendants that properly caring for the Plaintiff is caused a small gallstone and 'blood blisters' to develop on plaintiffs [sic] liver." ECF No. 1, ¶ 40. Even Plaintiff's allegations of pain predate Defendant's purported failure to provide him care. ECF No. 1, ¶¶ 18-26. Plaintiff fails to cite to any reason why his condition was one of urgency during the relevant time frame. ECF No. 1.

Nor is there any evidence from which a jury could reasonably conclude that a serious medical need arose from Plaintiff's chronic constipation or gallstones. The overwhelming medical evidence is to the contrary. Plaintiff has been evaluated by multiple DOC care providers and several independent specialty physicians, none of whom have concluded that his abdominal pain, gall stones, or constipation are conditions of urgency that may produce death, degeneration, or extreme pain. See, Ex. D, ¶¶ 18-22, 25, 30, 31-33, 43, 48, 54-55, 57-58, 61-64, 67-68; ECF No. 49, Pp. 661-662, 648-650, 640, 624, 606-608, 602, 590-594, 518-521, 293-304, 254-256, 214-220, 186-189, 37-40, 16-18. In fact, the conditions that Plaintiff has been diagnosed with are rather common and do not require urgent or immediate care. Ex. D, ¶¶ 19-22, 25, 30, 32, 48, 54-55, 57-58, 61-64, 67-68.

Plaintiff has been diagnosed with chronic constipation and non-obstructive Cholelithiasis or gallstones. Ex. D, ¶ 17, 27, 30. Constipation is a very common condition in which a person has uncomfortable or infrequent bowel movements. Ex. D, ¶ 18. It is typically a result of the colon absorbing too much water. Ex. D, ¶ 18. Constipation is not unusual in the incarcerated population for a myriad of reasons including but not limited to a) self-imposed fluid restriction, b) self-imposed decreased activity, and c) shyness regarding defecating while another person is in the room and/or delaying defecation until alone in the room. Ex. D, ¶ 19. Cholelithiasis, also known as gall stones, is a common condition where hardened pieces of bile form in a patient's gallbladder or bile ducts. Ex. D, ¶ 25 Gallstones generally do not cause symptoms unless they get stuck and cause a blockage. A blockage can cause a patient to experience upper abdominal pain and nausea. Ex. D, ¶ 25. Plaintiff's constipation, at most, appeared to be causing him discomfort. Ex. D, ¶¶ 21-22. Plaintiff's gallstones were deemed non-obstructive, and surgery was not indicated. Ex. D, ¶ 30. On no occasion did Plaintiff appear, to his providers, to be in any significant pain secondary to constipation or gall stones. Ex. D. ¶ 31; Ex C, ¶¶ 78-79. To the extent he experienced any pain or discomfort, his upper abdominal discomfort would likely be related to bloating and constipation. Ex. D, ¶ 54; ECF No. 49, Pg. 219. Indeed, Plaintiff reported his stomach pain was worse with food. ECF No. 49, Pg. 216.

Nor can there be any dispute of fact that the extensive treatment provided by Defendant Broadley did not put Plaintiff at risk of death, degeneration, or serious injury. Ex D, ¶¶ 11-68. Indeed, Defendant Broadley evaluated the Plaintiff on multiple occasions, ordered diagnostic testing, and referred him to specialists. Ex D, ¶ 27. As a result, a diagnostic work up confirmed the Plaintiff's diagnosis of Cholelithiasis and chronic constipation. Ex D, ¶ 27. There can be no dispute that Plaintiff's conditions have improved with various diagnosis and treatments that Defendant

Broadley ordered. For example, on July 23, 2021 and April 6, 2021, Plaintiff reported his new medications were working better and helping him. ECF No. 49, Pp 518, 602. Further, while Plaintiff reported moderate to severe pain on November 2, 2020 and March 22, 2021, he reported no pain during medical appointments on March 23, 2021, June 7, 2021, July 7, 2021, and February 21, 2023. ECF No. 49, Pp 25, 518-519, 573, 607, 609, 649, 652. In other words, to the extent Plaintiff reported he was experiencing pain, said reports indicate a clear trend toward diminishing pain and diminishing discomfort.

There can be no dispute that Plaintiff has ultimately benefited from the rigorous testing and treatment provided by Defendant Broadley. Given that Plaintiff's conditions did not worsen, and actually improved, during the relevant time period, Plaintiff cannot establish any inadequacy in the care he was provided. *See Ceparano v. Suffolk Cty. Dep't of Health*, No. 09-CV-0558 (SJF)(AKT), 2013 U.S. Dist. LEXIS 171033 (E.D.N.Y. Dec. 4, 2013)(finding that Plaintiff had failed to satisfy the objective prong where he had seen significant improvement).

A serious medical condition, one that would meet the legal requirement, is not before this Court.

***3. Defendants Broadley, Santavenere, Gallagher, Shea, and Cruz Were Not Deliberately Indifferent to Plaintiff's Medical Needs***

Even, assuming *arguendo*, that Plaintiff had a sufficiently serious medical need, Defendants Broadley, Santavenere, Gallagher, Shea, and Cruz were not deliberately indifferent to it. To satisfy the subjective requirement, "the charged officials must be subjectively reckless in their denial of medical care." *Barnes v. Uzu*, No. 20-CV-5885 (KMK), 2022 U.S. Dist. LEXIS 46014, at *32 (S.D.N.Y. Mar. 15, 2022) (quoting *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To be "subjectively reckless in the denial of medical care," the charged official must act, or fail to act, while *actually aware* of a substantial risk that serious

inmate harm will result. *Id.*; *see also Jusino v. Barone*, No. 3:22-CV-00490 (SALM), 2022 U.S. Dist. LEXIS 80675, at *7 (D. Conn. May 4, 2022) (dismissing deliberate indifference claim against prison warden because the plaintiff failed to allege that the warden "recklessly disregarded an excessive risk that plaintiff would suffer serious harm as a result of" the warden's actions).

No factfinder could reasonably conclude that Defendants Broadley, Santavenere, Gallagher, Shea, and Cruz were deliberately indifferent because none of them possessed the subjective knowledge and intent required for a claim of deliberate indifference.

**i. Defendant Broadley**

As indicated in the preceding sections, Plaintiff must prove that Defendant Broadley subjectively knew of a serious medical need and then subjectively ignored it. There is no genuine dispute that this did not happen as claimed in this case. On the contrary, APRN Broadley's care was extensive.

Plaintiff's medical records clearly demonstrate that Broadley, in fact, thoroughly evaluated Plaintiff's conditions and used her medical judgement to provide appropriate treatment for his conditions. It was her subjective belief based on diagnostic testing, consultative support, and her medical training that Plaintiff had chronic constipation, a common condition, which, at most, appeared to be causing him discomfort. Ex. D, ¶¶ 19, 21-22, 54. Far from disregarding Plaintiff's constipation, Defendant Broadley ordered extensive diagnostic testing; solicited independent consultative support; ordered and trialed various doses of prescription medication; ordered suppositories, laxatives, and stool softeners; ordered fiber supplements; and repeatedly encouraged Plaintiff to drink more water, engage in regular physical activity, and eat high fiber foods. Ex D, ¶¶ 28, 34-64; ECF No. 49, Pp., 29, 35, 40, 155, 157, 184, 186-189, 200, 208, 209, 211, 214-220, 226, 228, 229, 289, 291, 293-304, 580, 583, 583, 590-594, 598, 599, 602, 603, 606-608, 631, 632, 635, 638, 639, 640, 641, 643, 644, 645, 646, 648-650, 651, 658, 660, 661-

662. Although Broadley was not authorized to order Plaintiff a high fiber diet for constipation, the fiber supplements she ordered for Plaintiff met and exceeded the amount of fiber in a formal high fiber diet. Ex D, ¶ 29.

With regard to Plaintiff's gallstones, Broadley again ordered extensive diagnostic testing and solicited independent consultative support. Ex D, ¶¶ 25-27, 30, 34-64; ECF No. 49, Pp., 186-189, 293-304, 590-594. Based on the diagnostic testing, her training, and the guidance she received from independent medical experts she did not request or recommend gall bladder removal surgery. Ex D, ¶¶ 13, 30, 43, 48, 57-58; ECF No. 49, Pp., 186-189, 293-304, 590-594. This is because it was her subjective belief that Plaintiff did not have any obstructing stones, that surgical intervention was not indicated, and that surgery was not worth its inherent risks. *Id*.

Further, Broadley did not disregard the abdominal pain reported by Plaintiff. Instead, as discussed in the preceding paragraphs, she made numerous attempts to treat the underlying constipation. Further, over the course of providing treatment to Plaintiff she provided appropriate pain medication in the form of Ibuprofen. Ex D, ¶ 32. She believed these medications were appropriate to manage Plaintiff's pain, especially given the nature of his conditions, the absence of any obstructions, and the addictive nature of stronger pain killers. Ex D, ¶ 32. Indeed, it was Broadley's subjective belief that stronger pain killers such as opioids could actively worsen Plaintiff's constipation. Ex D, ¶ 33. Further, she takes a conservative approach to pain management which gradually increases painkiller strength based on need and avoids drugs prone to abuse such as opioid-type narcotics. Ex D, ¶ 12.

Finally, Broadley could not have been deliberately indifferent with respect to any delay in receiving specialty appointments because (1) the delay did not give rise to a serious medical need and (2) Broadley did not have control over the timing of these appointments. "Where the claim is

for a delay in treatment, the court focuses on the effect of the delay, not the underlying injuries, when determining if there is a serious medical need under the objective component of the deliberate indifference test." *Brockett v. Lupis*, No. 3:21-cv-355 (KAD), 2022 U.S. Dist. LEXIS 93638, at *20 (D. Conn. May 25, 2022)(citing *Smith v. Carpenter*, 316 F.3d 178 (2d Cir. 2003)). "A delay in medical treatment does not by itself violate an inmate's Eighth Amendment rights unless the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment." *Amaker v. Coombe*, 96 Civ. 1622 (JGK), 2002 U.S. Dist. LEXIS 5934, at *22-23 (S.D.N.Y. Mar. 29, 2002)(citing cases).

Here, delays in specialty appointments did not result in a worsening of Plaintiff's conditions. Ex D, ¶¶ 34-64, 68; ECF No. 49, Pp 1-330. Indeed, Plaintiff's medical records reflect that his reports of pain actually decreased following his March 30, 2022 gastroenterology appointment. ECF No. 49, Pp 25, 43. Further, even if she wanted to, APRN Broadley has no ability to guarantee that a patient will receive specialist appointments, specialty procedures, or surgery that she requested on a date certain. Ex D, ¶ 8. This is because DOC does not provide these services in-house, and instead contracts with outside providers. *Id*. Additionally, during the COVID-19 pandemic, which included the period between February 2020 and spring of 2022, DOC's contracted specialists severely limited access to non-life-threatening specialty appointments. Ex D, ¶ 10. This resulted in the suspension of many appointments until the end of the pandemic which created a back log. Ex D, ¶ 10. "Courts have ... refused to find deliberate indifference where delays in treatment were caused by circumstances that were outside the control of the charged officials. The logistical difficulties involved in scheduling outpatient appointments and transporting prisoners to outside facilities can present one such circumstance."

*Castro v. Lupis*, No. 3:22-cv-152 (MPS), 2023 U.S. Dist. LEXIS 209145, at *14 (D. Conn. Nov. 22, 2023)(quoting *Madera v. Ezekwe*, No. 10 CV 4459 (RJD) (LB), 2013 U.S. Dist. LEXIS 171948 (E.D.N.Y. Dec. 2, 2013)).

Far from deliberate indifference, APRN Broadley subjectively believes that she did everything in her power to treat the Plaintiff, address the Plaintiff's symptoms, and improve the Plaintiff's overall health and wellbeing. Ex D, ¶ 65.

Simply stated, there was no subjective, criminally reckless state of mind here by Broadley. She was not deliberately indifferent. APRN Broadley's care was thorough and medically appropriate given the circumstances. There is no competent medical evidence to even suggest Broadley's care was improper or amounts to even malpractice, let alone deliberate indifference and criminal recklessness amounting to cruel and unusual punishment. Therefore, Broadley prevails on the merits and is entitled to judgment in her favor on all claims against her.

**ii. Defendant Cruz**

Defendant Cruz also lacked the requisite subjective intent for liability under deliberate indifference. As a nurse, she relied upon the doctors and APRNs to manage Plaintiff's care and make medical decisions with respect to the type of care provided and the type of diagnostics ordered. Ex C, ¶¶ 7-13. Further, Cruz had no authority to order Plaintiff a therapeutic diet or to request specialist appointments, specialty procedures, surgery. Ex C, ¶¶ 10-11. Her role centered around gathering information about inmate medical issues and carrying out the orders of primary care providers such as doctors and APRNs. Ex C, ¶ 12.

Here, there can be no genuine dispute of fact that Cruz lacks the required subjective knowledge and intent required for a claim of deliberate indifference. Cruz's involvement in Plaintiff's care was extremely limited—she provided direct care to Plaintiff only five times between January 1, 2020 to August 8, 2022. Ex C, ¶ 70; ECF No. 49, Pp. 77, 93-94, 236, 306, 308,

516, 652-654. Whenever she met with Plaintiff she reviewed his medical records. Ex C, ¶ 80. At no point was she aware that Plaintiff had a condition that would have constituted a serious medical need. *Id*. Further, on no occasion did Plaintiff appear to be in significant pain during a visit. Ex C, ¶ 78. Had he appeared to be in significant pain during a visit, she would have immediately contacted a prescriber and documented it in his health record. Ex C, ¶ 79.

Further, in Cruz's role as Health Services Administrative Remedies Coordinator, there can be no dispute that it was her understanding that Plaintiff's care was being properly supervised and attended to by his normal care providers, especially his physicians or APRNs. Ex C, ¶ 41-68. Indeed, her responses to the Health Services Reviews she received, indicate her awareness that Plaintiff was being seen and treated by his provider and that he had specialist appointments forthcoming. Ex C, Att. 5, Pg., 2; Ex C, Att. 6, Pg. 3; Ex C, Att. 11, Pg., 1.

During and throughout Cruz's involvement with Plaintiff's care at issue in this case, Cruz believed that her actions and conduct were appropriate under the circumstances and within the standards and practices of her role and employment as a Correctional Head Nurse within the DOC. Ex C, ¶ 77.

In sum, there was no actionable, criminally reckless, subjective state of mind here by Cruz. She was not deliberately indifferent. Her involvement was limited, and it was medically appropriate given her role and the circumstances. Cruz prevails on the merits and is entitled to judgment in her favor on all claims against her.

**iii. Defendant Santavenere**

There can be no genuine dispute of fact that Santavenere lacked the required subjective knowledge and intent required for a claim of deliberate indifference. Santavenere involvement in Plaintiff's care was extremely limited., given his role as a Nursing Supervisor rather than a nurse providing direct or routine care. Ex F, ¶¶ 4-6, 9-13.

Indeed, Defendant Santavenere did not provide direct care to Plaintiff at all. Ex F, ¶ 13. He was in a supervisory or administrative role and relied upon the doctors and APRNs to manage Plaintiff's care, as well as the nursing staff that interacted with Plaintiff more regularly, as that was their role, not his. Ex F, ¶¶ 6, 9-12, 14-36, 37.

Further, far from deliberate indifference, on the occasions that Santavenere was made aware of Plaintiff's concerns through an inmate request or in person interaction he reviewed Plaintiff's medical records, spoke with Plaintiff's providers, tried to validate Plaintiff's concerns, and tried to address them. Ex F, ¶¶ 14-36. On no occasion could Santavenere validate Plaintiff's claims that he was not receiving adequate care, that the wait time for a specialist appointment was adversely impacting his health, that he was not being seen by medical staff, or that he was not having his requests responded to. Ex F, ¶¶ 14-36. Further, at no point during Santavenere's in-person visits with Plaintiff did Plaintiff appear to be in any significant pain. Ex F, ¶ 27. Had Plaintiff appeared to be in pain or appeared to have an emergent or urgent medical need, Santavenere would have documented it in Plaintiff's medical record and alerted his care provider. Ex F, ¶ 27; ECF No. 49. Indeed, it was always Defendant Santavenere's understanding that Plaintiff's care was being supervised and attended to by his normal care providers, especially his physicians or APRNs, and it was and is his understanding that they were making the medical decisions for how to manage Plaintiff's medical needs. Ex F, ¶ 37.

There can be no dispute that Santavenere lacked the criminally reckless, subjective state of mind necessary for a claim of deliberate indifference. Ex F, ¶ 38. As such, Defendant Santavenere is entitled to judgment in his favor.

**iv. Gallagher and Shea**

Finally, Defendants Gallagher and Shea also lacked the requisite subjective intent for liability under deliberate indifference. Both Defendants Shea and Gallagher are medical

administrators and not care providers. Ex G, ¶¶ 4-11; Ex H, ¶¶ 2-12. Neither have authority to make diagnosis or treatment decisions. *Id*. Neither have the ultimate say on the timing of outside medical appointments or the ability to order specialty diets. Ex G, ¶¶ 10-11; Ex H, ¶¶ 12-15. At most, these individuals can look into concerns raised by inmates about medical care and escalate them to a medical provider. Ex G, ¶¶ 13-22; Ex G, Atts. 1-5; Ex H, ¶¶ 10, 13, 16-17, 19-34; Ex H, Atts. 1-9. This is exactly what both of these individuals did. *Id*

Indeed, on each occasion that Plaintiff brought a concern or issue to Defendant Gallagher's or Defendant Shea's attention, these Defendant attempted to validate them by reaching out to medical staff and or reviewing Plaintiff's electronic medical records. Ex G, ¶¶ 13-22; Ex G, Atts. 1-5; Ex H, ¶¶ 19-34; Ex H, Atts. 1-9. At no point could either of these Defendants validate Plaintiff's claims that he was not receiving adequate care, that the wait time for a specialist appointment was adversely impacting his health, or that his requests were not being addressed. *Id*. On one occasion, Defendant Shea, mistakenly believing that Plaintiff had not been seen by a provider, actually referred Plaintiff to his provider for an evaluation. Ex H, ¶¶ 19-22; ECF No. 49, Pp., 655. This is *not*, in any way, shape, or form, deliberate indifference.

Moreover, it is indisputable that neither Gallagher nor Shea possessed the requisite mental state. Instead, it was their understanding that Plaintiff's care was being appropriately supervised and attended to by his normal care providers, especially his APRNs. Ex G, ¶¶ 13-22, 25; Ex G, Atts. 1-5; Ex H, ¶¶ 19-34, 37-38; Ex H, Atts. 1-9.

There is no genuine dispute of material fact. Plaintiff cannot satisfy the subjective element of his causes of action. The Defendants are entitled to judgment as a matter of law.

**4. Plaintiff's Mere Disagreement with His Provider Over Treatment Is Not Actionable Under the Eighth Amendment.**

"It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)(citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)); see also *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011).

"Only 'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners is sufficiently egregious to rise to the level of a constitutional violation." *Small v. Visinsky*, 386 Fed. App'x. 297, 299 (3d Cir. 2010)(quoting *White v. Napoleon*, 897 F.2d 103, 108-09 (1990)(quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

"Importantly, a 'difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment' does not constitute deliberate indifference." *Rutledge v. Alabama*, 724 Fed. Appx. 731, 735 (11th Cir. 2018)(quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)). "Plaintiff cannot establish that this amounts to more than mere negligence or a difference in medical opinion—conduct insufficient to support deliberate indifference." *Rutledge*, 724 Fed. Appx. at 735.

"Although Plaintiff may personally believe that he should have been treated differently, his personal disagreement with the treatment administered by his nurses and doctors is 'a classic example of a matter for medical judgment'—not a constitutional violation." *Id.* at 736 (quoting *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995)(quoting *Estelle*, 429 U.S. at 107)).

Courts in this District and Circuit have repeatedly held and applied this bedrock principle of law. *See*, e.g., *Reddick v. Lantz*, No. 3:07-CV-1793(JBA), 2010 WL 1286992, 2010 U.S. Dist. LEXIS 30220, *12 (D. Conn. Mar. 29, 2010)("[a] difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate

indifference.”); *Cerilli v. Rell*, No. 3:08-CV-0242(SRU), 2010 WL 3827960, 2010 U.S. Dist. LEXIS 99358, *17 (D. Conn. Sep. 23, 2010)(same); *Boomer v. Lanigan*, No. 00-CIV-5540(DLC), 2001 WL 1646725, 2001 U.S. Dist. LEXIS 20838, *9 (S.D.N.Y. Dec. 17, 2001)(mere differences of opinion between the prisoner and the defendants concerning the proper course of treatment does not constitute deliberate indifference); *Chance*, 143 F.3d at 702; *Dean*, 804 F.2d at 215; *Hill*, 657 F.3d at 123; see also *Hernandez v. Keane*, 341 F.3d 137, 146-47 (2d Cir. 2003)(judgment entered where “[p]laintiff’s claim of deliberate indifference rests largely upon delays in providing a treatment that was risky to begin with.”) A pure “issue of medical judgment” cannot form the basis for an Eighth Amendment claim. *Hernandez,* 341 F.3d at 146-47.

Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. Those issues implicate medical judgments and, at worst negligence amounting to medical malpractice, but not the Eighth Amendment. *Sonds v. St. Barnabus Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Plaintiff here cannot prevail. In Plaintiff’s own words his claims amount to mere disagreements with his providers over the type and timing of the treatment he was receiving:

> Q: Is there anything else that is important to me about the incident or your lawsuit that you have not told me today?
>
> A: I was able to see, like, the -- the GI specialist, but they were for, like, one of them was for surgery. One of them was for an endoscopy, well, and you know, the procedure, but I never seen a GI specialist for treatment that actually sit down with me and talk to me about my treatment and what's the next step we're going to take. You know what I mean?”

*See*, Ex I, 152:25-153:20; ECF No. 1. His disagreement is legally insufficient, and his desire for in person visits, a cure for his constipation or gallstones, or to dictate the timing of

appointments for non-emergent issues, or type of medication he receives, fail to rise to an Eighth Amendment violation as a matter of law.

**D. Plaintiff's Retaliation Claims Fail as A Matter of Law.**

Plaintiff's First Amendment retaliation claims against Cruz, Broadley, Cooper, and Shelton all fail because there is no evidence of either adverse action or a causal connection. Further, Defendants actions were motivated by legitimate non-retaliatory reasons, such as, discretionary medical judgment, compliance with DOC rules and procedures, and factors outside their authority and or control. Finally, Defendants Shelton and Cooper lack the requisite personal involvement necessary to have engaged in the adverse action alleged.

**1. Legal standard**

The Second Circuit has instructed district courts to "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official — even those otherwise not rising to the level of a constitutional violation — can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015); see also; *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike."); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (skepticism warranted by "near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated"); *Petitpas v. Griffin*, No. 3:20-cv-00769 (JAM), 2020 U.S. Dist. LEXIS 218449, at * 10 (D. Conn. Nov. 21, 2020).

To establish a First Amendment retaliation claim, a plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."

*Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation and quotation marks omitted). But "[t]he defendant may nonetheless avoid liability by showing that he or she would have taken the adverse action even in the absence of the protected conduct." *Id*. Moreover, the adverse action must have been sufficiently serious in that it "would deter a similarly situated [prisoner] of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir.2001)(overruled on other grounds); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). A complaint alleging retaliation must be supported by specific facts: conclusory statements are not sufficient. *See Green v. McLaughlin*, 480 Fed. Appx. 44, 46 (2d Cir. 2012).

Further, even if a plaintiff makes the appropriate showing of retaliation, a defendant may avoid liability if he demonstrates that he would have taken the adverse action even in the absence of the protected conduct." *Allah v. Murphy*, No. 9:14-CV-0438 (GTS/TWD), 2016 U.S. Dist. LEXIS 64995, at *37 (N.D.N.Y. May 16, 2016); *see also, Scott v. Coughlin*, 344 F.3d 282, 287, 288 (2d Cir. 2003) ("Regardless of the presence of retaliatory motive, . . . a defendant may be entitled to summary judgment if he can show . . . that even without the improper motivation, the alleged retaliatory action would have occurred.").

"The adverse action must have been serious enough to 'deter a similarly situated individual of ordinary firmness from exercising [his] constitutional rights.'" *Petitpas*, 2020 U.S. Dist. LEXIS 218449, at *10 (D. Conn. Nov. 21, 2020) (quoting *Fabricio v. Annucci*, 790 F. App'x 308, 311 (2d Cir. 2019)). Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection. *See Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir.1999). "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more

than average citizens, before a [retaliatory] action taken against them is considered adverse." *Dawes v. Walker*, 239 F.3d 489,493 (2d Cir.2001).

**1. The Treatment and Care Provided by Broadley and Cruz Did Not Constitute Adverse Action.**

As discussed in the preceding sections, there can be no dispute, that neither Defendant Broadley nor Defendant Cruz failed to provide Plaintiff adequate or timely medical care.[3] Therefore, to the extent Plaintiff alleges that a failure to provide medical care was adverse action, his retaliation claims must fail.

The voluminous record evidence establishes beyond dispute that Defendant Broadley provided Plaintiff extensive care for his conditions and that, in her role as nurse, Defendant Cruz provided appropriate medical services on each occasion she interacted with Plaintiff. *See* Exs C and D; ECF No. 49. Neither Cruz nor Broadley failed to take appropriate action regarding Plaintiff's conditions. Ex C, ¶¶ 81-82; Ex D, ¶¶ 65-66. Plaintiff himself directly acknowledged, and does not dispute, the extensive medical care he received for his conditions:

Q. So to recap, recap your treatment for abdominal pain -- okay? You were provided an x-ray in 2020. Is that right?
A. Yes.
Q. And then you were provided a CT scan on April 30th of 2021. Is that right?
A. Yes.
Q. And you were provided an ultrasound on February 17th of 2022. Is that right?
A. Yes.
Q. And a GI consult on March 30, 2022. Is that right?
A. Yes.
Q. And a surgical consult on April 12, 2022. Is that right?
A. Yes.
Q. And a colonoscopy on February 23, 2023. Is that right?
A. Yes.
Q. And for medications, you were initially given MiraLAX. Is that right?
A. Yes.

[3] Although the Initial Review Order indicates that the retaliatory conduct was a failure to provide adequate or timely medical treatment, Plaintiff's complaint and deposition testimony indicate it was a denial or return of grievances for all except Broadley. ECF No. 13, Pg. 10; ECF No. 1, ECF No 1. ¶¶ 32, 39, 47, 52, 57, 60; Ex. I, 152:8-21. Both are addressed here.

Q. And when that didn’t work, you were prescribed Trulance. Is that correct?
A. Yes.
Q. And when the Trulance didn't work, you were prescribed Linzess. Is that right?
A. Yes.
Q. And you're currently on Linzess. Is that correct?
A. Yes.
Q. And neither your GI doctor nor your primary care physician have indicated that your constipation or your gallbladder raises any cause for medical concern. Is that correct?
A. Yes.

Ex I, Deposition of Hector Torres, 88:21-90:6. Plaintiff’s conclusory allegations and statements are simply not sufficient to create adverse action where none exists. “[A] prisoner’s First Amendment retaliation claim must ‘be supported by specific and detailed factual allegations, not stated in wholly conclusory terms.’” *Petitpas*, 2020 U.S. Dist. LEXIS 218449, at *10 (quoting *Dolan*, 794 F.3d at 295). The Court should, therefore, enter judgment for Defendants Broadley and Cruz on Plaintiff’s retaliation claims against them.

**2. Plaintiff Was Not Actually Deterred from Further Protected Activity.**

“In the prison context, the Second Circuit has defined ‘adverse action objectively, as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising constitution rights.’” *Wright v. Snyder*, No. 3:21-CV-104 (SVN), 2024 U.S. Dist. LEXIS 33176, at *9 (D. Conn. Feb. 27, 2024)(*Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004)(internal quotation marks omittes).

Here, Plaintiff was not, in fact deterred from filing further administrative remedies. Although Plaintiff claims that Cruz returned a grievance on June 16, 2021, and Broadley retaliated by failing to provide adequate care after an HSAR filed on January 29, 2021, he was not, in fact, dissuaded from filing further HSARs. ECF No 1. ¶¶ 32, 39, 47, 52, 57. Indeed, Plaintiff continued to file multiple level 1 and level 2 HSARs, some of which were upheld, after June 16, 2021 and up until March of 2022. Ex C, ¶¶ 45-68; Ex C, Atts. 4, 6-12.

Similarly, although Plaintiff alleges that Shelton returned a June 7, 2021 grievance as a form of retaliation, and Cooper returned a grievance on July 9, 2021 as form of retaliation, neither of these actions dissuaded Plaintiff from filing another grievance. ECF No. 1, ¶¶ 49, 60. Despite these purportedly adverse actions, Plaintiff filed a Level 1 Grievance on February 28, 2022 which was logged and investigated by the grievance coordinator. Ex B, ¶¶ 25-28.

Although the test is an objective one, Plaintiff's actions are evidence that a person of ordinary firmness would not be dissuaded by having a couple grievances returned or purportedly not receiving the treatment he desired. "The Court is convinced that evidence of the plaintiff's First Amendment-protected activity postdating the alleged retaliation is relevant to the objective inquiry of whether a similarly-situated inmate of ordinary firmness would have been deterred by the defendant's alleged acts." *Wright v. Snyder*, No. 3:21-CV-104 (SVN), 2024 U.S. Dist. LEXIS 33176, at *11 (D. Conn. Feb. 27, 2024).[4] As an individual of ordinary firmness would not, in fact, be dissuaded, Plaintiff cannot satisfy the adverse action element of his retaliation claim.

**3. Cooper and Shelton Lack Personal Involvement in Plaintiff's Retaliation Claims.**

To the extent Plaintiff claims that Cooper and Shelton "failed to provide him with adequate or timely medical treatment due to a retaliatory animus" these claims fail as there can be no dispute that these Defendants lack any personal involvement in the provision of medical care. ECF No. 13, Pg. 10. A "plaintiff must directly plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti*, 983 F.3d 609, 612 (2d Cir. 2020). Neither of these Defendant are or have ever been a medical professional.

[4] "Other courts in this District have come to similar conclusions as to the probative value of such evidence in evaluating the person of ordinary firmness standard." *Wright v. Snyder*, No. 3:21-CV-104 (SVN), 2024 U.S. Dist. LEXIS 33176, at *12 (D. Conn. Feb. 27, 2024)(collecting cases).

Ex J, ¶ 6; Ex K, ¶ 5. They have never provided medical care, health care services, or medical treatment in any capacity. *Id*. Neither have any authority to order or dictate to Nurses, Medical Doctors, Physician's Assistants, or Advanced Practice Registered Nurses (APRNs) what medical decisions to make or what medical care to provide inmates. Ex J, ¶ 7-8; Ex K, ¶ 6-7. In fact, Administrative Directive 9.6 expressly prohibited these Defendants from considering grievance regarding medical care or medical services. Ex B, Att. 1, § 3(a)(i); Ex J, ¶ 18. 22, 29; Ex K, ¶ 15-18. These Defendants had no authority over and no involvement in Plaintiff's medical care whatsoever and therefore cannot have failed to provide him with medical treatment.

**4. There Is No Dispute, the Purportedly Adverse Actions Are Not Causally Connected to Plaintiff's Complaints.**

There is no dispute, the purportedly adverse actions of Defendants were simply not causally connected to the Administrative Remedies filed by Plaintiff. First, Defendants lacked any retaliatory motive or animus and second, Defendants all had legitimate non-retaliatory reasons for their actions.

**i. Defendants Did Not Possess Any Retaliatory Motive**

First, Defendants Broadley, Cruz, Cooper, and Shelton did not possess any retaliatory motive. "[W]hile we have held that temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation… we have consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim." *Faulk v. Fisher*, 545 F. App'x 56, 58 (2d Cir. 2013). Aside from Plaintiff's own conclusory statements and allegations, no evidence of retaliatory animus exists whatsoever. ECF No. 1.

Indeed, neither Broadley nor Cruz would fail to provide appropriate medical care for an inmate to retaliate against that inmate for any reason. Ex C, ¶¶ 84, 86; Ex D, ¶¶ 70-72. Similarly,

neither Cruz, Cooper, nor Shelton would fail to process an administrative remedy because an inmate lodged a complaint against them. Ex C, ¶ 85; Ex J, ¶¶ 35-36; Ex K, ¶¶ 20-21.

In the absence of any evidence of retaliatory animus, Defendants are entitled to judgement in their favor on all retaliation claims against them. "Without any non-conclusory allegations that the grievances and the wrongful conduct alleged are causally connected, his retaliation claims are little more than 'unadorned, the-defendant-unlawfully-harmed-me accusation[s].'" *Herbert v. Raczkowski*, No. 24-CV-0485 (JLS), 2024 U.S. Dist. LEXIS 140560, at *21-22 (W.D.N.Y. Aug. 5, 2024)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**ii. Defendants All Had Legitimate Reasons for Their Actions.**

Further, Plaintiff's retaliation claims against Defendants Broadley, Cruz, Cooper, and Shelton all fail because there can be no dispute that there are legitimate non-retaliatory reasons for their actions. "Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Morgan v. Dzurenda*, No. 3:14-cv-966(VAB), 2017 U.S. Dist. LEXIS 48445, at *41 (D. Conn. Mar. 31, 2017)(citing *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003))(granting summary judgement and dismissing retaliation claim).

There can be no dispute that Cruz, and Cooper, Shelton all would have rejected or returned Plaintiff's Administrative Remedies, regardless of the complaints or grievances he purportedly filed against them. This is because these Defendants were all required to follow a DOC directive—either A.D. 8.9 or A.D. 9.6—when processing Plaintiff's administrative remedies. Ex C, ¶¶ 15-16, 21-32; Ex C, Att. 1; Ex J, ¶ 4-5, 27-29; Ex K, ¶¶ 3-4, 16-19. At all relevant times, these Defendants believe that they rejected or returned Plaintiff's administrative remedies because they did not comply with the administrative remedies procedures in either Administrative Directive 8.9 or

Administrative Directive 9.6. Ex C, ¶¶ 53-55, 62-65, 66-68; Ex C, Atts, 8, 10, 12; Ex J, ¶¶ 11-27; Ex K, ¶¶ 15-19.

Assuming *arguendo* that Plaintiff can establish that Broadley's treatment constituted adverse action, there are legitimate, non-retaliatory indisputable reasons why Defendant Broadley provided Plaintiff treatment in the manner she did, such as, her subjective belief she was exercising discretionary medical judgment. According to Broadley—and the Plaintiff's own electronic medical record—she did everything in her power to treat the Plaintiff, address the Plaintiff's symptoms, and improve the Plaintiff's overall health and wellbeing. Ex D, ¶ 65; ECF No. 49. With respect to Plaintiff's claim that Broadley took medication away out of retaliation, this is a gross mischaracterization of what it means to make medications "Direct Observation Therapy" or DOT, and is unsupported by Plaintiff's own voluminous medical records. ECF No. 1, ¶ 32, 39, 47; ECF No. 49, Pp. 3-14, 19-21, 23-24, 28, 30, 33-6, 41-2, 47-154, 156, 158-83, 190-99, 201-3, 205-7, 209-10, 212, 221-224, 227, 230-234, 237-39, 241-242, 245-252, 260-262, 264-67, 270, 273-278, 284-285, 287-88, 290, 305, 311-515, 517, 522, 524, 526-40, 542-55, 559-72, 576-77, 580, 582-84, 588, 597, 601, 604-05, 611, 614-15, 622-23, 625, 630-35, 637-39, 642, 643, 659, 625, 660; Ex D, ¶¶ 44-45. Any claim that Broadley made Plaintiff's medications DOT out of retaliation is likewise unsupported and belied by a legitimate non-retaliatory medical reason. Ex D, ¶ 45.

"To the extent that the adverse action was taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone." *Morgan v. Dzurenda*, No. 3:14-cv-966(VAB), 2017 U.S. Dist. LEXIS 48445, at *41 (D. Conn. Mar. 31, 2017). Defendants' legitimate non-retaliatory reasons for their actions preclude a finding of retaliation.

**E. Any Claims for Injunctive Relief are Barred by the Eleventh Amendment.**

Any claims for injunctive relief in the Plaintiff's Complaint are barred by the Eleventh Amendment and do not fall under the *Ex parte Young* exception to Eleventh Amendment immunity. Accordingly, judgment must enter in favor of the Defendants and these claims for relief must be dismissed.

Absent consent, the Eleventh Amendment confers upon States immunity from suit. "A suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Cory v. White*, 457 U.S. 85, 91 (1982). However, the Supreme Court has recognized an important exception to this general rule: a suit challenging the constitutionality of a state official's action is not considered one against the State. *Ex parte Young*, 209 U.S. 123 (1908). As the Supreme Court has explained, notwithstanding the Eleventh Amendment, federal courts have the power to prospectively enjoin state officials from acting unconstitutionally or in violation of federal law. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011). The *Ex parte Young* exception only applies to prospective injunctive relief and does not apply to monetary damages or retroactive relief. *Edelman v. Jordan*, 415 U.S. 651, 655 (1974). The *Ex parte Young* exception also does not apply to suits "against state officers who are not alleged to be acting against federal or state law." *Cory*, 457 U.S. 85, at 91. "[I]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002).

Here, as detailed above, the Plaintiff has not established a Eighth Amendment violation based on deliberate indifference during the relevant period, and therefore, he fails to meet the narrow exception to Eleventh Amendment immunity under *Ex parte Young*. Further, even

assuming, *arguendo*, that Plaintiff had established some type of violation, no reasonable jury could conclude that such a violation was "ongoing" in light of the record evidence to the contrary. Fatal to the injunctive relief claims are the overwhelming record evidence and Plaintiff's own admissions that he is receiving and has received the specialty appointments and care he seeks. Ex D, ¶¶ 27-28, 30-32, 34-64; ECF No. 49; Ex I, 88:21-90:6.

Accordingly, any claims for injunctive relief are barred by the Eleventh Amendment and must be dismissed.

### F. Any Claims for Injunctive Relief are Barred by the PLRA.

Finally, Plaintiff's claim for injunctive relief is also barred by the limitations on injunctive relief contained in the Prison Litigation Reform Act (PLRA). Not only does the PLRA require complete exhaustion of administrative remedies prior to even bringing an action under federal law, see 42 U.S.C. §1997e(a), (which plaintiff has failed to do), but also, prohibits courts from entering intrusive injunction orders in the absence of ongoing violations of federal rights. Since there is no underlying constitutional or federal statutory violation, 18 U.S.C. §3626 prohibits the entry of an injunction in this case. 18 U.S.C. § 3626 provides in part, as follows:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn extends no further than necessary to correct the violation of the Federal right, and <u>is the least intrusive means</u> necessary to correct the violation of the Federal right. <u>The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.</u> (emphasis added).

Thus, any prospective relief ordered in this case must "extend no further than necessary to correct the violation of the Federal right of [this] particular ... plaintiff." *Handberry v. Thompson*, 446 F.3d 335, 344–45 (2d Cir. 2006) (emphasis in original). Accordingly, this Court is without authority under the PLRA's provisions to order any relief.

The injunctive claims raised by the Plaintiff in this case are not narrowly drawn, extend further than necessary, and are not the least intrusive means of addressing Plaintiff's allegations. Here, Plaintiff requests for proper medical care and proper medication could not be broader. See, ECF No. 1.

Further, in considering the claims for injunctive relief, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." 18 U.S.C. § 3626(a)(1)(A). Accordingly, the affidavits, declarations and opposing papers filed by the Defendants are entitled as a matter of law to substantial weight. Ordering prison Doctors, APRNs, and nurses to provide the Plaintiff with relief he does not need and that they cannot provide would most certainly have an adverse impact on the criminal justice system. Under the circumstances at bar, it would allow any inmate, regardless of how frivolous his claim, to obtain specialist appointments by filing an action in Federal court. It would prioritize inmates without any emergent need for such an appointment over those with urgent needs. Ex D, ¶¶ 8-10; Ex H, ¶ 15. It would also require doctors, APRNs, and nurses to act outside both their chain of command and the scope of their practice. Finally, again under the circumstances at bar, it would allow the courts to micromanage prison medical care by ordering providers to provide the Plaintiff treatment that he neither specifies nor needs and do so without the knowledge or information necessary to practice medicine in a correctional setting. Under these standards, the Court should deny Plaintiff's motion and grant summary judgment to Defendants on all claims in this case.

Accordingly, any claims for injunctive relief are also barred by the PLRA and must be dismissed.

**G. Defendants Are Entitled to Qualified Immunity.**

Even if this Court could somehow find that the Defendants were involved in a constitutional violation, the Defendants are still entitled to qualified immunity.

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). Accordingly, the dispositive question is whether the defendants' respective conduct clearly violated the plaintiff's federal constitutional rights, and that the defendants should have known their conduct was unconstitutional. *Id*. The Court may exercise its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (modifying *Saucier v. Katz*, 533 U.S. 194 (2001)). Consequently, Defendants are shielded by qualified immunity if the court finds that Plaintiff's constitutional rights were not violated, Defendants are shielded if the Court finds that there was no clearly established constitutional right at issue, and Defendants are shielded even if clearly established rights were violated, so long as they acted reasonably. *Id.*

This doctrine balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014). Qualified immunity applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Pearson*, 555 U.S. at 565). Thus, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Id*. at 743 (internal quotation marks omitted).

"To be clearly established, a right must be sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (emphasis added); *see also Garcia*, 779 F.3d at 92 (noting that the "dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

The dispositive question is "whether the violative nature of the *particular conduct* is clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, at 742 (2011)). The Supreme Court has cautioned the lower courts many times that "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (quoting *al-Kidd*, 563 U.S. at 742). Rather, clearly established law "must be 'particularized' to the facts of the case." *Id*. at 551 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The right must be clearly established "in light of the specific context of the case." *Saucier*, 533 U.S. at 201. To show that a right was "clearly established," a plaintiff must be able to cite either a decision from the Supreme Court or the Second Circuit on the issue. *City and County of San Francisco v. Sheehan*, 575 U.S. 600 (2015); *see also Taylor v. Barkes,* 575 U.S. 822 (2015). Prior controlling precedent from the Supreme Court or the Second Circuit is required to have "placed beyond debate the unconstitutionality of the Institution's procedures…" *Taylor v. Barkes*, 575 U.S. at 825.

**1. No Constitutional Violation Occurred.**

First, as detailed above, Plaintiff cannot demonstrate a genuine dispute of material facts regarding whether Defendants Broadley, Santavenere, Gallagher, Shea, Cruz, Cooper, or Shelton violated his rights as claimed in the retaliation and deliberate indifference to medical needs claims in the Complaint. This therefore also entitles these Defendants to qualified immunity by definition.

"Qualified immunity shields government officials from civil damages liability unless the official [1] violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." *Taylor*, 135 S. Ct., at 2044 (bracketed material added); *see also Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019).

Practically, the first requirement in qualified immunity analysis mirrors analysis of the merits of constitutional claims. *See Pearson v. Callhan*, 555 U.S. 223, 236 (2009). In fact, before 2009, courts were required to first determine if a plaintiff demonstrated a constitutional claim or violation before addressing whether the right was clearly established. *Id*.

Plaintiff fails to show that an "official violated a . . . constitutional right" at all, let alone one that "was clearly established at the time of the challenged conduct." *See Taylor*, 135 S. Ct. at 2044. In short, because Plaintiff cannot demonstrate a genuine dispute of material facts regarding whether Defendants violated his constitutional rights as claimed in the Complaint, Defendants are also entitled to qualified immunity for the same reasons. The Court should grant this motion and enter judgment for Defendants Broadley, Santavenere, Gallagher, Shea, Cruz, Cooper, and Shelton as to Plaintiff's retaliation claims and deliberate indifference to medical needs claims; they are immune from suit and claims for money damages.

**2. No Clearly Established Constitutional Right Existed.**

Research reveals no precedential authority of this Circuit or the Supreme Court that clearly establishes deliberate indifference to medical needs under the facts and circumstances present in this case or that supports retaliation under the first amendment under the facts and circumstances present in this case.

i. ***Deliberate Indifference to Medical Needs***.

Under the circumstances outlined in the preceding sections, there is no sufficient case that establishes "beyond debate" that Defendants Broadley, Santavenere, Gallagher, Shea, and Cruz's conduct in this case arose to Eighth Amendment deliberate indifference. In fact, for multiple reasons, cases out of the Second Circuit are to the contrary. First, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim and [s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Davis v. Furtick*, No. 3:21-CV-00648 (SVN), 2022 U.S. Dist. LEXIS 152830, at *18 (D. Conn. Aug. 25, 2022) (dismissing deliberate indifference claim) (quotation marks omitted) (citing and quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)). *See also, Bourgoin v. Weir*, No. 3:10cv391 (JBA), 2011 U.S. Dist. LEXIS 108778, at *20 (D. Conn. Sep. 23, 2011) (constant and evolving course of treatment for constipation—even if not entirely effective or prisoner's preferred choice of treatment—does not constitute deliberate indifference). Second, improvements in health do not typically give rise to a deliberate indifference claim. *See*, e.g., *Ceparano v. Suffolk Cty. Dep't of Health*, No. 09-CV-0558 (SJF)(AKT), 2013 U.S. Dist. LEXIS 171033 (E.D.N.Y. Dec. 4, 2013) (finding that Plaintiff had failed to satisfy the objective prong where he had seen significant improvement); *Mack v. Bangsil*, No. 07-CV-0829(M), 2011 U.S. Dist. LEXIS 9725 (W.D.N.Y. Feb. 1, 2011) (no deliberate indifference where patient experienced periods of improvement due to treatment and physician affirmatively acted when Plaintiff's condition worsened). Third, is also well established that delays in treatment outside the control of the charged officials is not deliberate indifference. *Hernandez v. Keane*, 341 F.3d 137, 146 (2d Cir. 2003) (no deliberate indifference where "most of th[e] delay [in receiving surgery] was caused by factors outside defendants' control"); *see also, Benjamin v. Pillai*, 794 F. App'x 8, 12 (2d Cir. 2019) (holding that, absent evidence that defendant had any control over

scheduling of tests or deviated from ordinary standard of care in providing medical assistance, prisoner plaintiff cannot, as a matter of law, sustain deliberate indifference claim).

***ii. Retaliation.***

Similarly, under the circumstances outlined in the preceding sections, there is no sufficient case that establishes "beyond debate" that, under the circumstances, the conduct of Defendants Broadley, Cruz, Cooper, or Shelton could constitute retaliation under the First Amendment. On the contrary, conclusory and unsupported claims that a medical provider retaliated by failing to provide treatment are usually rejected. *Benjamin v. Pillai*, 794 F. App'x 8 (2d Cir. 2019). Further, *de minimus* delays in processing prison grievances does not rise to the level of an adverse action. "While we have held that a prison official's *repeated* interference with an inmate's efforts to file grievances might necessitate 'efforts beyond what is reasonably expected of an inmate with ordinary firmness,' *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted), we decline to find that the month-long delay in filing one grievance alleged here rises to the level of a constitutional violation." *Hayes v. Dahlke*, 976 F.3d 259, 274 (2d Cir. 2020). Finally, it is well established that a prisoner must establish that a causal connection existed to prevail on a First Amendment retaliation claim. *E.g.*, *Morrow v. Bauersfeld*, No. 21-2928-cv, 2022 U.S. App. LEXIS 32149, at *3 (2d Cir. Nov. 22, 2022).

Regardless of how the rights are defined, the critical inquiry is "whether existing precedent placed the conclusion that [the Defendant] acted unreasonably in these circumstances 'beyond debate.'" *al-Kidd, supra*, at 741. Again, no such precedent from either the Second Circuit or the Supreme Court exists under the facts and circumstances present in this case. Therefore, Defendants Broadley, Santavenere, Gallagher, Shea, Cruz, Cooper, and Shelton cannot be said to have violated a clearly established right with respect to Plaintiff's medical needs and freedom of speech.

**3. It Was Objectively Reasonable for Defendants to Believe That Their Conduct Was Lawful.**

Further, even if the previous two qualified immunity grounds somehow did not decide this case, the Defendants Broadley, Santavenere, Gallagher, Shea, Cruz, Cooper, and Shelton are entitled to qualified immunity on Plaintiff's deliberate indifference to medical needs and retaliation claims because it was objectively reasonable for these Defendants to believe their conduct was lawful. *See Mudge v. Zugalla*, 939 F.3d 72, 79 (2d Cir. 2019).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the officer to believe the conduct at issue was lawful." *Id*. (quoting *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013)).

Here, as discussed in preceding sections, at no point did Plaintiff's condition rise to the level of a serious medical need. Ex B, ¶¶ 15-65; ECF No 49. Defendant Broadley provided adequate and extensive care for the Plaintiff's constipation and gallstones. *Id*. Furthermore, neither Santavenere, Gallagher, Shea or Cruz possessed the requisite criminally reckless mental state to be deliberately indifferent. Ex. C, F, G, H, J, K. Finally, there is no evidence of either adverse action or a causal connection and Defendants Broadley, Cruz, Cooper, and Shelton's actions were motivated by legitimate non-retaliatory reasons, such as, discretionary medical judgment, compliance with DOC rules and procedures, and factors outside their authority and or control. Ex C, D, J, K.

Critically there is no clearly established right violated by Defendants Broadley, Santavenere, Gallagher, Shea, Cruz, Cooper, or Shelton in the first place. However, even if Plaintiff could overcome that, there is no sufficient constitutional precedent from the Second

Circuit or Supreme Court on the books at the time of the alleged conduct that would place it "beyond debate" that Defendants violated Plaintiff's clearly established constitutional rights. It was objectively reasonable for Defendants to believe that their conduct was lawful. The Court should enter judgment for Defendants; they are entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the motion for summary judgment be granted as to all counts and all Defendants and judgment be entered in their favor as a matter of law.

*Respectfully submitted,*

DEFENDANTS

Deborah Broadley, Vincent Santavenere, Colleen Gallagher, Kirsten Shea, and Debra Cruz in their individual and official capacities.

ARC Cooper and ARC Shelton in their individual capacities only.

WILLIAM TONG
ATTORNEY GENERAL

Dated February 14, 2025
Hartford, Connecticut

BY: /s/ Leland J. Moore

Leland J. Moore (ct30844)
Assistant Attorney General
State of Connecticut
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
leland.moore@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

**CERTIFICATION**

I hereby certify that on February 14, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ Leland J. Moore
Leland J. Moore
Assistant Attorney General